525 A.2d 373

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Adelaide Helen ANNESKI, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 20, 1986.

Filed March 23, 1987.

Reargument Denied May 22, 1987.

Petition for Allowance of Appeal Denied Sept. 30, 1987.

Dwight C. Harvey, McConnelsburg, for appellant.

James M. Schall, McConnelsburg, for Com., appellee.

Before WIEAND, TAMILIA and HESTER, JJ.

WIEAND, Judge:

Adelaide Anneski was charged in a private, criminal complaint with making a terroristic threat. A jury heard testimony that during an argument with a neighbor, Anneski had told her neighbor if the neighbor "tried to run over her kids anymore at the bus stop" she, Anneski, would bring a gun and use it. The jury found that this statement, which Anneski admitted making, had been made with intent to terrorize and returned a verdict of guilty as charged. The trial court denied post-trial motions and imposed a sentence of probation for three years. Anneski filed a direct appeal.[1]

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, as verdict winner, and accept as true all evidence upon which the jury could properly have based its verdict. We then determine whether that evidence, together with all reasonable inferences to be drawn therefrom, was sufficient to enable the jury to find each and every element of the crime beyond a reasonable doubt. See: *Commonwealth v. Jackson*, 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984); *Commonwealth v. Tribble*, 502 Pa. 619, 621, 467 A.2d 1130, 1131 (1983); *Commonwealth v. Brown*, 336 Pa.Super. 628,

---

[1]. The District Attorney, despite the difficult nature of this case, has not seen fit to file a brief.

634, 486 A.2d 441, 444 (1984). In making this determination, we consider all the evidence received, whether the trial court's evidentiary rulings were correct or incorrect. See: *Commonwealth v. Waldman*, 484 Pa. 217, 222–223, 398 A.2d 1022, 1025 (1979); *Commonwealth v. Boyd*, 463 Pa. 343, 347, 344 A.2d 864, 866 (1975); *Commonwealth v. Deemer*, 316 Pa.Super. 28, 31, 462 A.2d 776, 777 (1983); *Commonwealth v. Minnis*, 312 Pa.Super. 53, 55, 458 A.2d 231, 232 (1983).

In *Commonwealth v. Speller*, 311 Pa.Super. 569, 458 A.2d 198 (1983), a panel of this Court said:

The crime of terroristic threats is defined in 18 Pa.C.S.A. § 2706 as follows:

A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.

A violation of the statute is proved by evidence that (1) a threat to commit a crime of violence was made and (2) such threat was communicated with intent to terrorize. *Commonwealth v. Ferrer*, 283 Pa.Super. 21, 23, 423 A.2d 423, 424 (1980); *Commonwealth v. Ashford*, 268 Pa.Super. 225, 229, 407 A.2d 1328, 1329 (1979); *Commonwealth v. Holguin*, 254 Pa.Super. 295, 305, 385 A.2d 1346, 1351 (1978). "The offense does not require that the accused intend to carry out the threat; it does require an intent to terrorize. The harm sought to be prevented is the psychological distress which follows from an invasion of another's sense of personal security." *Commonwealth v. Hardwick*, [299 Pa.Super. 362, 365, 445 A.2d 796, 797]. See: Model Penal Code § 211.3, revised comments (1980). See also: *Commonwealth v. Green*, 287 Pa.Super. 220, 429 A.2d 1180 (1981); *Commonwealth v. Bunting*, 284 Pa.Super. 444, 426 A.2d 130 (1981); *Com-*

*monwealth v. Ashford, supra; Commonwealth v. Holguin, supra.*

*Commonwealth v. Speller, supra,* 311 Pa.Superior Ct. at 573, 458 A.2d at 200.

From the evidence presented in this case, a jury could conceivably have found that appellant threatened to commit a crime of violence and that she did so with an intent to inflict terror and psychological distress upon her neighbor. In addition to testimony identifying the threat, there was testimony that appellant had previously told the school bus driver, without identifying the victim, that he would be a witness to a homicide. There was also evidence that on the day following the argument, appellant had in fact carried a gun when she accompanied her children to the school bus stop.

When all of the evidence is considered, however, it becomes apparent that the jury's finding is contrary to the weight of the evidence. The balance of the evidence, most of which was agreed to by all parties, disclosed that Anneski and Lana Group were neighbors. To get to and from the school bus stop, Anneski's children were required to walk along a rural roadway to the highway. Mrs. Group also used the lane, and occasionally drove her automobile over it. She complained that the Anneski children, walking abreast, had impeded her progress. A contest of wills developed between the Anneski children, who were slow in making way, and Mrs. Group, who attempted to force her way through the group of children with her automobile. Appellant believed that her children were in danger and that Mrs. Group would ultimately run them down. She had requested, unsuccessfully, that the school bus stop be moved and also that police protection be provided for the children. On the morning of September 13, 1984, according to testimony received from the Anneski children, Mrs. Group's vehicle struck a schoolbag being carried by one of the children. Although the prosecution denied that contact had been made, there can be no doubt that appellant believed that her daughter had been struck by Mrs. Group's

vehicle. It was later that morning that appellant spoke via telephone with the school bus driver and, while complaining about the danger to her children because of Mrs. Group's conduct, made reference to a possible homicide.

On the afternoon of the same day, appellant confronted Mrs. Group and the latter's husband outside the Group home. During the yelling and screaming which ensued, Mrs. Group said, according to defense testimony, that she would run into the children again if they didn't get out of her way. In response, as all witnesses agree and as appellant concedes, she said that if Mrs. Group ran into her children again she would get a gun and use it.

Although a jury, by viewing in isolation certain selected portions of the evidence, could possibly infer that appellant's threat to use a gun was intended to terrorize, the weight of the evidence, when considered in its entirety, most certainly negatived the making of a terroristic threat as defined by 18 Pa.C.S. § 2706. The evidence disclosed, rather, that appellant spoke in anger, during a heated argument, because she believed that her child had been struck by Mrs. Group's automobile, and because she feared for the future safety of her children. Her threat was prompted by the belief that Mrs. Group would run into her children in the future. It contained the promise that if such should occur, appellant would get a gun and use it. In summary, it appears that there was an exchange of threats made during a heated, perhaps hysterical, argument between neighbors.

The provisions of 18 Pa.C.S. § 2706 are derived from the Model Penal Code. The Joint State Government Commission, in its Comment to this section of the Pennsylvania Crimes Code, has said that the purpose of the criminal provision "is to impose criminal liability on persons who make threats which seriously impair personal security.... It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." See: *Commonwealth v. Kidd*, 296 Pa.Super. 393, 442 A.2d 826 (1982). The statutory proscription "is directed against those who

employ threats in circumstances more serious than would be covered by petty offenses like disorderly conduct or breach of the peace." Toll, Pennsylvania Crimes Code Annotated § 2706 (1974), quoting Model Penal Code Comment: [T.D. No. 11, pp. 8–9]. In reviewing a statement alleged to be a terroristic threat, we do not look at the statement in a vacuum. Instead, we must look at it in light of the surrounding circumstances. *Commonwealth v. Griffin*, 310 Pa.Super. 39, 45, 456 A.2d 171, 174 (1983).

■ The surrounding circumstances in the instant case, although not absolutely precluding a finding that appellant intended to terrorize, suggest by their overwhelming weight that appellant lacked a settled purpose to terrorize Mrs. Group. Instead, her statement that she would get a gun and use it was a spur-of-the-moment threat resulting from transitory anger prompted by Mrs. Group's threat to hit the Anneski children again with her car if they obstructed her vehicle's passage. Such a response, even if not dignified or noble, was not the type of conduct made criminal by 18 Pa.C.S. § 2706.[2] See: *Commonwealth v. Kidd, supra; Commonwealth v. Ferrer*, 283 Pa.Super. 21, 423 A.2d 423 (1980). See also: Annotation, *Validity and Construction of Terroristic Threat Statutes*, 45 A.L.R. 4th 949, 988 (1986). In order that justice may be given another opportunity to prevail, therefore, a new trial will be granted.

A new trial is also necessary because of an erroneous evidentiary ruling by the trial court. Mrs. Group, the complainant and private prosecutrix, was permitted to testify, over objection, that she had heard that appellant previously had shot at other persons. This hearsay testimony was improper, not only because it was hearsay, but because it was irrelevant and highly prejudicial.

2. Compare: *Wiggins v. State*, 171 Ga.App. 358, 319 S.E.2d 528 (1984); *State v. Realina*, 1 Hawaii App. 167, 616 P.2d 229 (1980); Annotation, *Validity and Construction of Terroristic Threat Statutes*, 45 A.L.R. 4th 949, 990 (1986).

 The offense of terroristic threats, as we have observed, was intended to impose criminal liability on persons who make threats which seriously impair another's personal security. It is the making of the threat with intent to terrorize that constitutes the crime. Neither the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime. Whether the complainant believed that appellant had previously shot at another person, therefore, was irrelevant. Moreover, because the evidence suggested that appellant had previously been involved in unrelated criminal activity, this evidence was highly prejudicial. See: *Commonwealth v. Nichols*, 485 Pa. 1, 400 A.2d 1281 (1979); *Commonwealth v. Roman*, 465 Pa. 515, 351 A.2d 214 (1976); *Commonwealth v. Shealey*, 324 Pa.Super. 56, 471 A.2d 459 (1984).

 The appellant, on direct examination, testified that although she was concerned about her children and did not want them to be harmed by Mrs. Group, she would never shoot anyone. The prosecuting attorney then asked, during cross-examination, whether appellant had not carried a gun to the bus stop on the day after her argument with Mrs. Group. The trial court overruled a defense objection to the question, and appellant contends that this was error. However, the scope and manner of cross-examination are within the discretion of the trial court, whose decision with respect thereto will not be disturbed absent an abuse of discretion. *Commonwealth v. Orlowski*, 332 Pa.Super. 600, 636, 481 A.2d 952, 970 (1984). There was no abuse of discretion in the instant case. Appellant's conduct on the day following the argument was part of the same episode, and her conduct on that occasion was arguably relevant to attack the credibility of inconsistent testimony given by appellant during her direct testimony.

We have examined appellant's other averments of trial error but find no merit therein.[3] Because a new trial is

---

3. These include (1) the court's refusal to grant a continuance and appoint other counsel; (2) the court's denial of a motion to suppress

required, we find it unnecessary to review the sentence which the court imposed.

Reversed and remanded for a new trial. Jurisdiction is not retained.

appellant's conversation with the school bus operator; and (3) the trial court's jury instructions (appellant did not object thereto).