J-A05026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANIEL JASIONOWSKI | |
| Appellant | No. 407 EDA 2015 |

Appeal from the Judgment of Sentence September 11, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008134-2014

BEFORE:  OLSON, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                    **FILED JULY 06, 2016**

Daniel Jasionowski[1] appeals from the judgment of sentence imposed on September 11, 2014, in the Court of Common Pleas of Philadelphia County, made final by the denial of post-sentence motions on January 15, 2015.  At the conclusion of a bench trial, which took place on the same day as sentencing, the trial court convicted Jasionowski of terroristic threats and possession of an instrument of crime ("PIC").[2]  The trial court sentenced

---

[*] Former Justice specially assigned to the Superior Court.

[1]  The trial court (and part of the record) refers to the appellant as "Jasiunowski," but the appellant (and the remaining part of the record) spells his name "Jasionowski." For consistency, we will refer to the appellant as "Jasionowski."

[2]  18 Pa.C.S. § 2706(a)(1) and 907(a), respectively.
*(Footnote Continued Next Page)*

Jasionowski to an aggregate term of five years' probation. On appeal, Jasionowski raises sufficiency, self-defense, and weight challenges.[3] After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

The trial court set forth the factual history as follows:

> On February 12, 2014, at approximately 6:50 p.m., Ms. Wanda Pittman entered into the shared alleyway behind her home on the 6500 block of Bradford Terrace in the City and County of Philadelphia in a rented U-Haul truck. Ms. Pittman observed a cable company truck parked in the alley, blocking her progress. [Jasionowski] was moving items from the truck into a driveway. Ms. Pittman had called her children on her cell phone to have them ready to move some furniture as soon as she was parked. After a few minutes, Ms. Pittman exited her vehicle, approached [Jasionowski] and asked him if he would be long. [Jasionowski] related that he would take as long as he wanted, and began to use profane terms. An argument ensued. Ms. Pittman's daughter came to her side during the argument and [Jasionowski] went into his home through the garage and retrieved a handgun. Ms. Pittman's daughter, Tiffany Pittman[,] called the police. Holding the firearm in his hand, [Jasionowski] continued to yell at Ms. Pittman and her daughter at a distance of approximately four feet. Shortly thereafter, police arrived from both ends of the alley.
>
> Police Officer Elaine Conn arrived in the alleyway and recovered [Jasionowski]'s handgun from his jacket pocket.
>
> [Jasionowski] testified that Ms. Pittman commented that … [Jasionowski] had better hope that the police arrived before her son arrived, and that he lifted his shirt to reveal his firearm, in a holster clipped to his waist, and responded that he would defend himself. [Jasionowski] also testified that he never unholstered

_____

(Footnote Continued)

[3] Based on the nature of the claims, we have reorganized the issues in our analysis.

- 2 -

his firearm. This court did not take [Jasionowski]'s testimony as credible over Ms. Pittman's testimony as to these details.

Trial Court Opinion, 5/11/2015, at 2-3 (record citations omitted).

Jasionowski was charged with terroristic threats, PIC, simple assault, and recklessly endangering another person. As noted above, on September 11, 2014, at Jasionowski's bench trial, the court convicted him of terroristic threats and PIC. That same day, the court sentenced him to two concurrent terms of five years' probation for both counts. Jasionowski filed a post-sentence motion, which was denied by operation of law on January 15, 2015. This timely appeal followed.[4]

In Jasionowski's first issue, he claims there was insufficient evidence to support his conviction for terroristic threats. Jasionowski's Brief at 13.[5] Specifically, he states the Commonwealth did not prove he "had the criminal intent to terrorize another or had reckless disregard for the risk of causing such terror." *Id.* at 14. Jasionowski argues, "Although the trial court seems to find … [his] testimony self[-]serving and not credible, there would be no reason for [him] to walk into his home and retrieve[] a gun except if he was

_____

[4] On February 17, 2015, the trial court ordered Jasionowski to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Jasionowski filed a concise statement on March 9, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 11, 2015.

[5] Jasionowski does not challenge the sufficiency of the evidence with respect to his PIC conviction.

being threatened by Ms. Pittman and her daughter." *Id.* at 15. Moreover, he complains,

> Neither the Commonwealth during their presentation of evidence nor the trial Judge in his written opinion explained what motivation [Jasionowski] would have for going into his home and retrieving a gun. Additionally, there was no testimony presented by the Commonwealth or explanation in the trial court's opinion why [Jasionowski,] if not believed, would react to an older woman calmly walking up to him asking him how long he is going to be unless something additional happened. In fact, the trial court … stated you can always get some embellishment and exaggeration all the time. (Referring to all testimony). Furthermore, the trial court never decided whether the gun was pointed or shown by [Jasionowski] as he testified.

*Id.* at 15. Jasionowski further states he and Pittman were engaged in "a heated argument" and therefore, "any action with the gun was not with the intent to terrorize or a reckless disregard that the action would cause someone to be terrorized." *Id.* at 16. Relying on *Commonwealth v. Anneski*, 525 A.2d 373 (Pa. Super. 1987), *appeal denied*, 532 A.2d 19 (Pa. 1987), Jasionowski asserts his "actions were a direct response to those of [Pittman] and her daughter and not done with [the] intent to terrorize or reckless disregard." *Id.* at 17.

We begin with our well-settled standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a

defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Yong****,* 120 A.3d 299, 311 (Pa. Super. 2015) (citation omitted), *appeal granted on other grounds*, ___ A.3d ___ [606 EAL 2015] (Pa. 2016).

The crime of terroristic threats is defined, in relevant part, as follows:

A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another[.]

18 Pa.C.S. § 2706(a)(1).

"[T]he Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." ***Commonwealth v. Tizer****,* 454 Pa. Super. 1, 684 A. 2d 597, 600 (1996). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." ***In re J.H.****,* 797 A.2d 260, 262 (Pa. Super. 2002). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." ***Tizer****,* 684 A.2d at 600.

Section 2706 "is not meant to penalize mere spur-of-the-moment threats which result from anger." *In re J.H.,* 797 A.2d at 262–63.[6]  *See also Tizer*, 684 A.2d at 600 (indicating statute is not meant to penalize spur-of-the-moment threats arising out of anger during a dispute); *Commonwealth v. Anneski,* 362 Pa. Super. 580, 525 A.2d 373 (1987) (concluding where defendant threatened to retrieve and use gun against her neighbor during argument, in which the neighbor also threatened to run over defendant's children with her car, did not constitute a terroristic threat because circumstances of the exchange suggested spur-of-the-moment threat made during heated exchange and defendant lacked a settled purpose to terrorize her neighbor).  However, "[b]eing angry does not render a person incapable of forming the intent to terrorize." *In re J.H.,* 797 A.2d at 263.  "[T]his Court must consider the totality of circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation." *Id.*

*Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa. Super. 2003).

Here, a review of the record reveals the following.  Pittman testified the exchange between herself and Jasionowski lasted approximately 15 to 20 minutes.  N.T., 9/11/2014, at 9.  Pittman stated that she asked Jasionowski how long he was going to be in the alleyway and he replied, "As long as I f'ing … want to, nigger bitch." *Id.*  Pittman also testified, "We said so many things to each other, you know.  I said to him, 'I don't believe if, you know, my son or my boyfriend was here, you wouldn't be talking to me like that, because I'm a woman.'" *Id.*  Pittman's daughter came up, asked

---

6  "The purpose of [Section 2706] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience." 18 Pa.C.S.A. § 2706, *Comment*.

Jasionowski why he was arguing with an "old lady," and laughed at him. *Id.* at 10.

The verbal incident then deteriorated because Jasionowski went into his home, retrieved the gun, and came back out. *Id.* While standing roughly four to six feet away, he pointed the gun at her and waved it back and forth. *Id.* at 11-12. Jasionowski also pointed the gun at Pittman's daughter. *Id.* at 12. Pittman stated that she could not recall what Jasionowski yelled at her while holding the gun because she was "petrified." *Id.* at 13.

Jasionowski took the stand and testified that he always carries his gun on his right-hand side in a holster. *Id.* at 74. He stated:

> When [Pittman] had saw [sic] the gun, it was still on my right-hand side. She was on the phone with somebody and her daughter was on the phone with -- telling her uncle to hurry up and get here before the cops, and I said, it doesn't matter if they come, if they -- they are not going to move the truck; it doesn't matter. And if they are going to come start anything, I'm going to defend myself, my property, with my kids in the house.
>
> …
>
> I lifted up my sweatshirt and I showed them the butt of my gun sticking out of my pocket.

*Id.* at 75-76. Jasionowski further testified that he never took the gun out of the holster or waved it back and forth. *Id.* at 76.

Based on this evidence, the trial court found the following:

> [Jasionowski], involved in a heated argument with Ms. Pittman and eventually her daughter, retreated into his home and returned to the argument while brandishing a handgun. The

- 7 -

context and circumstances surrounding [Jasionowski]'s actions were sufficient to convince this court of [his] guilt. As concerns [Jasionowski]'s assertion that he lacked criminal intent to evoke terror, this court need only look to the language of the statute to discern that a defendant need not harbor the specific intent to terrorize his victim – the elements of the offense are established so long [as] the evidence shows even "reckless disregard" for the risk of causing terror. Even if [Jasionowski] manifestly did not intend to invoke terror in Ms. Pittman, his failure to recognize that conduct so extreme would provoke Ms. Pittman's obvious fear of injury can only be characterized as reckless disregard. Accordingly, this court finds the evidence more than ample to establish the intent element of section 2706. *Accord*, *Commonwealth v. Sinnott*, 976 A.2d 1184, 1188 (2009) aff'd in part, rev'd in part, 612 Pa. 321, 30 A.3d 1105 (2011) (Finding sufficient evidence for reckless disregard when defendant approached victims with a hammer and electric drill, after a heated argument).

Trial Court Opinion, 5/11/2015, at 4-5.

We agree with the court's rationale. Initially, we note to the extent Jasionowski asks this Court to discount or reweigh the victim's testimony in favor of his own testimony, our standard of review prohibits this kind of approach to appellate review. *See Yong*, *supra*. Therefore, Jasionowski is not entitled to such relief on his sufficiency challenge.

Moreover, based on the totality of the circumstances surrounding the incident in question, we conclude Jasionowski possessed the requisite intent to sustain the terroristic threats conviction because a reasonable person would conclude that this was not "mere spur-of-the-moment threats which result from anger." *In re J.H.,* 797 A.2d at 262–63. Jasionowski's derogatory remarks and heated conversation with the victim lasted roughly 20 minutes. Although Jasionowski was angry and acrimonious, that alone

- 8 -

did not negate his intent. Jasionowski left the conversation, went inside his home, and then came back out with an actual gun. By waving the gun at Pittman and her daughter, Jasionowski intended that his statements and actions would carry sufficient weight to convince them to stop disturbing him. Furthermore, Jasionowski acted with reckless disregard for the risk of causing terror when he brought the gun out and pointed it at the women. Pittman's testimony, which the trial court found credible, was that she was so petrified she could not hear him continue to yell at her. We note that an explicit, spoken threat is not required to sustain a conviction for terroristic threats. *See Commonwealth v. McCalman*, 795 A.2d 412, 418 (Pa. Super. 2002), *appeal denied*, 812 A.2d 1228 (Pa. 2002) (determining terroristic threats was established by the defendant's actions in holding a gun to three people's heads even though his use of offensive language does not rise to the level of a terroristic threat); *In re Larry Maloney*, 636 A.2d 671, 676 (Pa. Super. 1994) (finding there was sufficient to establish a *prima facie* case of making a terroristic threat where victim alleged that driver-defendant pointed a gun at him and told him to "get the fuck out of here"); *Commonwealth v. Hudgens*, 582 A.2d 1352, 1359 (Pa. Super. 1990) (holding that where a defendant displays a weapon while threatening a victim, the victim was "subjected to the precise type of psychological harm and impairment of personal security which the statute seeks to prevent").

Jasionowski's overall conduct was not the result of a heated exchange between himself and Pittman, but was intended to cause fear.

Additionally, Jasionowski's reliance on **Anneski**, **supra**, does not compel a different result. In **Anneski**, the victim threatened to run over the appellant's children with her car, if the children did not move out of her way. **Anneski**, 525 A.2d at 375. A battle of wills developed between the two female individuals. At one point, the victim's "vehicle struck a schoolbag being carried by one of the children." **Id.** The victim later stated that "she would run into the children again if they didn't get out of her way." **Id.** In response to the threat, the defendant stated that if the victim attempted to harm her children again, she would get a gun and use it. Based on these facts, a panel of this Court held the statement was a spur-of-the-moment type of threat which was made during a heated argument. **Id.** at 376.

Unlike **Anneski**, in the present case, Jasionowski did not just yell at the victim and her daughter, he also waved the gun at them from a very short distance. Moreover, there was no evidence presented that Pittman and her daughter threatened Jasionowski in any manner. As such, we conclude the Commonwealth presented sufficient evidence to establish Jasionowski's acts clearly amounted to a reckless disregard for the risk of causing terror against Pittman.

In Jasionowski's second argument, he claims the trial court erred by not accepting his affirmative defense of self-defense. Jasionowski's Brief at 25. Specifically, he states that

> Ms. Pittman and her daughter's action justified his use of merely showing or pointing a gun in their direction in response to their actions. Common sense does not dictate that displaying or pointing a gun without uttering any words would be a reaction to someone calmly asking him how long he was going to be moving items out of his truck.
>
> …
>
> There would be no other reason to brandish a gun during a heated discussion by neighbors when no threats were made to the aggressor. In fact, [Jasionowski's] fiancé testified the situation escalated when Ms. Pittman's daughter arrived. The totality of the surrounding circumstances as found by the trial court were erroneous.

*Id.* at 26.

With respect to the defense of self-defense, we are guided by the following:

> Section 505 sets forth the elements of self-defense:
>
> § 505. Use of force in self-protection
>
> (a) Use of force justifiable for protection of the person.-- The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> 18 Pa.C.S.A. § 505(a).
>
> "When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt." ***Commonwealth v. Bullock***,

2008 PA Super 83, 948 A.2d 818, 824 (Pa. Super. 2008). The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. *Commonwealth v. McClendon*, 2005 PA Super 164, 874 A.2d 1223, 1230 (Pa. Super. 2005). The Commonwealth need only prove one of these elements beyond a reasonable doubt to sufficiently disprove a self-defense claim. *Commonwealth v. Burns*, 2000 PA Super 397, 765 A.2d 1144, 1149 (Pa. Super. 2000).

*Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa. Super. 2009),

*appeal denied*, 987 A.2d 161 (Pa. 2009).

Here, the trial court found the following:

In finding [Jasionowski] guilty, this court did not find credible [Jasionowski]'s self-serving testimony that he merely showed his gun on his hip to dissuade perceived aggression from Ms. Pittman's family members. Indeed, the court found that [Jasionowski] was the aggressor in pursuing a heated argument with Ms. Pittman while holding a handgun. As stated above, the court found that [Jasionowski] acted with at least reckless disregard for the risk of causing terror by his extreme conduct.

Trial Court Opinion, 5/11/2015, at 6.

In light of the case law, we disagree with Jasionowski and concur with the trial court. The facts are clear that the initial interaction was a discussion between Pittman and Jasionowski, in which Pittman asked how long Jasionowski's vehicle would remain in the alleyway. Jasionowski escalated the conflict by using derogatory language towards Pittman and then he went into his residence and returned, introducing a gun into the situation. As such, one can reasonably infer he was the initial aggressor.

Furthermore, the testimony does not establish that the use of such force was justified since at the time, he was not in imminent danger of death or serious bodily harm. Likewise, he could have retreated, as is evidenced by the fact that he able to go into his home to retrieve the weapon. **Ventura**, 975 A.2d at 1143. Moreover, we reiterate that the court, sitting as the fact-finder, was free to believe or reject the testimony. **See Yong**, 120 A.3d at 311. Here, the court found Pittman and her daughter credible, and rejected Jasionowski's testimony. Therefore, we conclude Jasionowski's self-defense argument fails.

In Jasionowski's final argument, he complains the trial court erred in finding that the verdict was against the weight of the evidence. **See** Jasionowski's Brief at 20-24. Before we may address the merits of this claim, we must determine whether Jasionowski has properly preserved the issue.

> "[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; **Commonwealth v. Priest**, 18 A.3d 1235, 1239 (Pa. Super. 2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." **Commonwealth v. Sherwood**, 603 Pa. 92, 982 A.2d 483, 494 (2009).

**Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012).

Here, a review of the record reveals Jasionowski did not raise a weight of the evidence claim in a pre-sentence motion, nor did he address the issue

- 13 -

orally prior to sentencing.[7] While Jasionowski did file a post-sentence motion on September 16, 2014, he failed to include a weight of the evidence allegation in that motion. **See** Post-Sentence/Trial Motion, 9/16/2014, at unnumbered 1-2. Accordingly, we find this issue waived for purposes of appeal. **See Priest**, **supra** (waiving weight claim for failure to present claim in the lower court, either orally or in writing before sentencing or in a post-sentence motion pursuant to Pa.R.Crim.P. 607).[8]

Judgment of sentence affirmed.

_____

[7] We note that, at the conclusion of the sentencing hearing, the trial court specifically informed Jasionowski of his post-sentence and appellate rights. **See** N.T., 9/11/2014, at 126-127.

[8] Even if we overlooked this deficiency, we would still be compelled to affirm the court's decision, based on its findings, which are as follows:

> Here, the court heard credible testimony from Ms. Pittman and her daughter indicating that [Jasionowski] approached her and her daughter enraged and holding a firearm. The court was free to believe this portion of the Commonwealth's evidence, and did so. Therefore, the court's verdict on the charges of terroristic threats and possession of an instrument of crime was not so contrary to the evidence as to shock one's sense of justice.

Trial Court Opinion, 5/11/2015, at 5.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/6/2016